**Dr. Warner R. WILSON, Plaintiff,**

v.

**Martin MOSS, et al., Defendants.**

**No. C–3–80–556.**

United States District Court,
S. D. Ohio, W. D.

April 5, 1982.

David L. Hall, Dayton, Ohio, for plaintiff.

Thomas E. Jenks, Howard P. Krisher, Jeffrey E. Froelich, Dayton, Ohio, for defendants.

DECISION AND ENTRY DISMISSING FIFTH CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 U.S.C. § 1985(3); DISMISSING FOURTH CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 U.S.C. 1983; DEFENDANTS' MOTION TO DISMISS CONDITIONALLY SUSTAINED TO THAT EXTENT; PLAINTIFF GIVEN PERIOD OF TIME TO FILE AMENDED COMPLAINT WITH RESPECT TO FOURTH CAUSE OF ACTION; DECISION DEFERRED ON MOTION TO DISMISS FIRST THREE CAUSES OF ACTION

RICE, District Judge.

## I. Introduction

This matter is before the Court pursuant to the motion of Defendants Martin Moss and James Webb to dismiss the Complaint under Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed.R. Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. Defendants have submitted a memorandum in which they contend that this Court lacks jurisdiction over the first three causes of action in the Complaint because the claims alleged therein are cognizable only under state law. Although pendent jurisdiction could be asserted over these claims under *United Mine Workers v. Gibbs*, 383 U.S.

715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), Defendants contend that such an approach is not permissible herein because neither the Fourth nor the Fifth Cause of Action states a claim upon which relief may be granted under 42 U.S.C. § 1983, or under 42 U.S.C. § 1985(3), respectively. Plaintiff has submitted a reply memorandum which, in essence, controverts these contentions by arguing that the first three claims, as well as the Fourth and Fifth Cause of Action, state a claim for relief under federal law.

In determining whether Defendants' motion should be granted, the Court will first evaluate the sufficiency of the claims asserted in the Fourth and Fifth Cause of Action, for if claims are stated therein, there is no need to address the sufficiency under Federal law, of the alleged state law claims contained in the first three causes of action in the Complaint. With this point in mind, the Court now turns to consideration of the Fifth Cause of Action.

II. *Sufficiency of the Claims Contained in the Fifth Cause of Action*

In the Fifth Cause of Action set forth in the Complaint, Plaintiff has alleged that the Defendants conspired with unnamed third persons to deny him the opportunity to practice his profession, and to deny him advancements both privately and in his employment at Wright State University, in violation of 42 U.S.C. § 1985(3). Defendants have moved to dismiss this claim based on the Supreme Court's decision in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970) (*Griffin*), which requires that there must be "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action" in actions brought under § 1985(3). *Id.* at 102, 91 S.Ct. at 1798. Plaintiff has not responded directly to this point, but has contended that because discriminatory animus depends upon motivation, which is an evidentiary matter, dismissal at this stage of the proceedings would be inappropriate.

The Supreme Court has indicated that "a complaint should not be dismissed for fail-ure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Under the facts as set forth in the Fifth Cause of Action, the Court concludes that Plaintiff has failed to state a claim under § 1985(3), as that statute was interpreted in the *Griffin* decision. Therein, the Court determined that the coverage of § 1985(3) did extend to private conspiracies which did not involve state action. 403 U.S. at 101, 91 S.Ct. at 1797. The Court, however, commented as follows:

That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others.... The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.... The language requiring intent to deprive of *equal* protection, ... means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action.

*Id.* at 101–102, 91 S.Ct. at 1797–1798 (emphasis in the original).

While the Supreme Court did not specify precisely which "classes" might be protected under § 1985(3), the Sixth Circuit, in *Browder v. Tipton*, 630 F.2d 1149 (6th Cir. 1980) (*Browder*), did define and limit those persons protected under § 1985(3) as follows:

We hold that the class of individuals protected by the "equal protection of the laws" language of the statute are those so-called "discrete and insular" minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics. The persons protected under the "equal privileges and immunities" language of the statute are

those individuals who join together as a class for the purpose of asserting certain fundamental rights.

*Id.* at 1150.

In the present case, there are simply no allegations, either in the Fifth Cause of Action, or in any other portion of the Complaint, which indicate that Plaintiff is within any class to whom protection has been extended by *Griffin* and *Browder.* For that matter, the complaint is devoid of allegations that Plaintiff is a member of any particular class or group, except for the bare assertion that he is a licensed psychologist. While this fact may assume some pertinence for other reasons, which will be more fully articulated later in this opinion, it does not have meaning for purposes of § 1985(3), at least in the present context. Therefore, the Court concludes that the Fifth Cause of Action must be dismissed for failure to state a claim upon which relief can be granted. Having disposed of the issues pertaining to § 1985(3), the Court will now consider the sufficiency of the allegations contained in the Fourth Cause of Action.

III. *Analysis of the Fourth Cause of Action*

■ In the Fourth Cause of Action, Plaintiff alleges that the Defendants have, jointly and concertedly, under color of state law, deprived him of his civil rights, including promotion, advancements, pay increases, and other perquisites of a fully-tenured professorship, and have interfered with his right to practice his profession as he is licensed to do by the State of Ohio. Defendants have moved for dismissal of this claim by contending that because the allegations of the Complaint do not indicate that Plaintiff has suffered a deprivation of any right secured by the Constitution, the Fourth Cause of Action fails to state a claim for which relief can be granted under 42 U.S.C. § 1983. Plaintiff has responded to this contention by arguing that Defendants, who are both state employees, have conspired with state officials, i.e., "the Licensing Office of the State of Ohio" (Doc.

# 10, p. 3) with regard to the licensing of psychologists.

42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court, in *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), stated that:

By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Id.* at 640, 100 S.Ct. at 1923 (citation omitted).

The allegations in the Fourth Cause of Action indicate that Plaintiff has been denied promotions, pay increases, advancements, and other perquisites of a fully tenured professorship at Wright State University. Under the above standard, however, these contentions do not state a claim upon which relief can be granted under § 1983. While there is an allegation in the Fourth Cause of Action to the effect that the Defendants were acting under color of law, there is no indication that the rights asserted therein are protected by the Fourteenth Amendment. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court stated that:

"[P]roperty" denotes a broad range of interests that are secured by "existing rules or understandings." . . . A person's interest in a benefit is a "property" interest for due process purposes if there are such mutually explicit understandings

that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Id.* at 601, 92 S.Ct. at 2699, quoting from *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

While there may be either mutually explicit understandings, or contractual guarantees regarding Plaintiff's pay increases and the like, there are presently no allegations in the Complaint to that effect. The Court believes that to infer claims from the mere fact that Plaintiff is a tenured professor, without any particularized allegations indicating what property rights in fact flow from that status, would be unwarranted speculation. Therefore, because the claims in the Fourth Cause of Action, as it is currently constituted, do not establish the presence of a federally protected property right, the Court concludes that the Fourth Cause of Action must be conditionally dismissed for failure to state a claim upon which relief may be granted. However, Plaintiff will be permitted to file an amended complaint, within fourteen days of the receipt of this entry, to make the requisite allegations regarding his "entitlements," if they in fact exist. If no amended complaint is filed, or if said complaint is filed and found wanting, this conditional dismissal will be made absolute.

Assuming *arguendo* that Plaintiff does possess property interests in pay increases and promotions, there is an additional matter which has caused the Court serious difficulty, and which, therefore, requires some comment. During the November 4, 1981 in-chambers conference on the Motion for Temporary Restraining Order, which had been filed by the Defendants in an attempt to restrain certain administrative hearings at Wright State University, Plaintiff's counsel indicated that Defendants Webb and Moss were being sued *only* in their private capacities, and *only* for acts occurring outside the scope of their University employment. (See partial transcript of proceedings of November 4, 1981, attached as Exhibit "A".) If this is indeed the case, it would appear, in addition to the deficiency previously noted, i.e., the failure to assert a federally protected property interest, that the under color of law or state action requirement of § 1983 would not be satisfied. If Defendants are not being sued in connection with actions taken within the scope of their university employment, or on behalf of Wright State University, then there would be no basis upon which to premise the conclusion that they were acting under color of law. It also goes without saying that the contention that Plaintiff is suing for acts outside the scope of Defendant's university employment, casts considerable doubt upon his claims that he has been deprived of certain rights arising from his status as a tenured professor. Therefore, should Plaintiff choose to file an amended complaint, he is directed to indicate clearly, concisely, and with adequate specificity, in precisely which capacity these Defendants are being sued, and for what actions.[1]

The preceding analysis has illustrated that the allegations in the Fourth Cause of Action fail to state a claim upon which relief may be granted under § 1983. In order to afford Plaintiff the most liberal treatment prior to dismissal, however, the

---

1. It should, of course, be evident that if the state of affairs is as Plaintiff's counsel has represented, filing an amended complaint would be a fruitless expenditure of time. Moreover, assuming *arguendo* that Webb and Moss are being sued in their official capacities, and that Plaintiff has property interests in promotions and pay increases which are protected under the Fourteenth Amendment, it is still questionable whether a cognizable § 1983 claim is present herein. In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court stated that in order to satisfy the requirements for a Fourteenth Amendment violation, the aggrieved party must not only be deprived of a property interest, but also the deprivation must have been accomplished without due process of law. *See, id.* 101 S.Ct. at 1913. Specifically, the Court noted that where an adequate remedy for the deprivation was provided by the State, the conclusion that there had been any constitutional deprivation without due process of law would be " 'avoided.' " *Id.* at 1916, approving *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), modified en banc, 545 F.2d 565 (1976), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

Court will consider certain allegations which are contained in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss. In that document, Plaintiff has indicated that Defendants Webb and Moss have conspired with state officials in connection with the licensing of psychologists. Therefore, it can be assumed, since Plaintiff is a psychologist licensed by the State of Ohio (Complaint, ¶ 2), that he is attempting to assert a property interest based on that fact. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court indicated that in determining whether an asserted property right exists, it is appropriate to consult state law. In fact, the Court said:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709.

■ Ohio law does provide for the examination of applicants for psychologist's licenses, Ohio Rev.Code Ann. §§ 4732.10, 4732.11 (Page), and further states that "[a] license issued by the state board of psychology shall remain in effect until suspended or revoked. A current valid license shall entitle the holder to practice psychology." Ohio Rev.Code Ann. § 4732.13 (Page). Finally, Ohio Rev.Code Ann. § 4732.17 (Page, Supp.1980) indicates that, on the basis of one of the grounds enumerated therein, the state board of psychology may refuse to issue a license, may issue a reprimand, or may suspend or revoke the license of a licensed psychologist. In addition, § 4732.-17 provides for written charges and a hearing prior to any disciplinary action. Thus, under Ohio law, it is clear that Plaintiff has a property interest, or legitimate claim of entitlement, to practice psychology once he has been licensed, without being formally disciplined unless certain procedures have been followed. In the present case, however, even giving full credence to the con-

tentions in Plaintiff's memorandum that Defendants have conspired with state licensing officials, there is still no indication that Plaintiff has been *deprived* of his personal property right. In this context, it is significant that at no point, in the Complaint, in his memorandum, or elsewhere, has Plaintiff alleged that he has been disciplined in any manner, and thus deprived of a property interest to which he is entitled.

Based on the foregoing analysis, the Court must conclude that even construed with the utmost liberality, the allegations in the Fourth Cause of Action fail to state a claim upon which relief may be granted under § 1983. Accordingly, because both the Fourth and the Fifth Causes of Action must be dismissed, it is necessary for the Court to examine the claims contained in the first three causes of action to determine whether they may still be entertained. In making the following comments regarding the first three causes of action, the Court is aware that Plaintiff has been afforded an opportunity to amend his complaint, and that, therefore, any conclusions reached must be tentative only. In the event, however, that Plaintiff does not file an amended complaint, or if for some other reason, *see*, footnote 2, *supra*, the claims other than those in the first three causes of action are dismissed prior to trial, then the rulings in Part IV of this Entry will take full effect.

IV. *Analysis of Counts III, IV and V (First Three Causes of Action)*

Defendants have contended that the claims asserted in the first three causes of action are state law claims, and that consequently, if no federal cause of action is stated in the Fourth and Fifth Causes of Action, this Court is precluded, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (*Gibbs*), from retaining jurisdiction over the remaining pendent claims. Plaintiff has replied by arguing that even if the claims in the first three causes of action are state law claims, they can also be characterized as federal causes of action in that they involve rights under the First, Fifth and Four-

teenth Amendments, such as *inter alia,* the right to privacy, the right to equal protection of the laws, and the right to liberty. Therefore, Plaintiff has maintained, the first three causes of action provide this Court with an independent basis of jurisdiction under 28 U.S.C. § 1331. Before addressing the issue of whether the claims set forth in the first three causes of action may be retained under the doctrine of pendent jurisdiction, the Court must first consider whether jurisdiction may be warranted under § 1331, as Plaintiff has suggested.

28 U.S.C. § 1331, as amended in 1980, provides that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974), the Supreme Court stated that:

> This Court has repeatedly held that in order for a claim to arise "under the Constitution, laws, or treaties of the United States," "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the Plaintiff's cause of action." ... The federal questions "must be disclosed on the face of the complaint, unaided by the answer."

*Id.* at 127–128, 94 S.Ct. at 1003–1004, quoting from *Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (*Gully*). In *Gully,* the Supreme Court found that federal jurisdiction did not exist where the suit in question was premised upon a contract whose obligations had been created by the state. *See, id.* at 114–115, 57 S.Ct. at 98. Specifically, the Court stated, "[a] covenant for a valuable consideration to pay another's debts is valid and enforcible without reference to a federal law.... There is no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law." *Id.* at 114, 57 S.Ct. at 98. *See also: Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), wherein the Supreme Court found, in an action brought by the Oneida Indian Nation, that federal jurisdiction existed because the complaint had "asserted a current right to possession conferred by federal law." *Id.* at 666, 94 S.Ct. at 776. The Court distinguished *Gully,* by stating, "for jurisdictional purposes, this is not a case where the underlying right or obligation *arises only under state law* and federal law is merely alleged as a barrier to its effectuation, as was the case in *Gully v. First National Bank ...."* *Id.* at 675, 94 S.Ct. at 781 (emphasis added).

■ Like *Gully,* the present case involves claims which arise only under state law. Beyond the bare assertion, in paragraph one of the Complaint, that the Court has jurisdiction under, *inter alia,* § 1331, there is no reference either to any Constitutional provision, or to any statute of the United States, in the first three causes of action. Moreover, although Plaintiff has made vague references in his memorandum to the First, Fifth and Fourteenth Amendments (Doc. # 10, p. 2), he has failed to furnish any basis, either by reference to the allegations in the Complaint, or by citation of legal authority, upon which this Court could conclude that he is asserting rights protected by, or arising from the Constitution. For example, in the First Cause of Action, Plaintiff has alleged that the Defendants, individually, and through a concerted course of action, have interfered with his right to privacy by intruding into his private activities, and have caused him mental suffering, shame and humiliation. While these allegations may provide a basis for recovery under Ohio law, which recognizes a cause of action for wrongful intrusion into one's private affairs, *see, Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956), the Supreme Court has not yet found that the right of privacy guaranteed by the Constitution extends to situations such as those involved herein. In *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69 (8th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976) (*McNally*), the Eighth Circuit stated that "[t]he constitutional right of privacy is not to be equated with the common law right recognized by state

tort law." *Id.* at 76 (citations omitted). The Court further noted that the Supreme Court had recognized only a limited doctrine of constitutional privacy, protecting "only the most intimate phases of personal life." *Id.* In a recent case, the Sixth Circuit Court of Appeals approved and followed *McNally* and other cases which had adopted a restrictive view of the right of privacy. *See, J. P. v. DeSanti*, 653 F.2d 1080, 1090 & n.6 (6th Cir. 1981). Therein, the Court said:

> We agree with those courts that have restricted the right of privacy to its boundaries as established in *Paul v. Davis, supra,* and *Roe v. Wade*, 410 U.S. [113] at 152, 93 S.Ct. [705] at 726 [35

L.Ed.2d 147]—those personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty." *Id.* at 1090 (citations omitted). *See also: Paul v. Davis*, 424 U.S. 693, 712–713, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976) (declining to enlarge scope of constitutional right of privacy beyond fundamental matters such as procreation, contraception, family relationships, and the like). Thus, because the First Cause of Action contains no allegations which seek relief directly under the Constitution of the United States, it cannot provide a basis for federal jurisdiction under § 1331.[2]

■ Likewise, the Second Cause of Action does not provide a basis for federal

2. The Court is aware that the preferred approach under § 1331 is a dismissal for failure to state a claim upon which relief may be granted, rather than for lack of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 681–682, 66 S.Ct. 773, 775–776, 90 L.Ed. 939 (1946) (*Bell*); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2628–2629, 57 L.Ed.2d 595 (1978); *Griffin v. Bell-Whitley Community Action Agency*, 614 F.2d 1102, 1105–1107 (6th Cir.), cert. denied, 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980) (holding that while district court erred in dismissing for lack of federal question jurisdiction, dismissal could be affirmed on basis that complaint failed to state a claim upon which relief could be granted). In *Bell*, the Supreme Court stated that:

> Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn.... [w]here the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit....
>
> Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.

327 U.S. at 681–682, 66 S.Ct. at 775–776. The exceptions to the above rule, as noted by the Supreme Court in *Bell*, are found to exist "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–683, 66 S.Ct. at 776. With regard to the substantiality exception, the Supreme Court has further indicated that:

> [T]he federal question averred may be plainly insubstantial either because obviously without merit, or "because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."

*Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933), quoting *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); *Accord: Duke Power Co.*, 438 U.S. at 70–71, 98 S.Ct. at 2628–2629, quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–677, 94 S.Ct. 772, 776–782, 39 L.Ed.2d 73 (1974).

The Court does not believe that the *Bell* doctrine was intended to require a finding of federal jurisdiction in cases such as the present, which provide no basis for concluding that the alleged violations are cognizable under anything but state law. However, assuming *arguendo* that the analysis outlined in *Bell* must be applied herein, it is apparent that the privacy claims in the First Cause of Action are insubstantial. Based on the discussion in the main text, which indicates that the Supreme Court has refused to recognize a constitutional right to privacy in cases such as the present, which do not involve certain fundamental rights such as procreation, the Court must conclude that the constitutional claim asserted by Plaintiff has been foreclosed by the Supreme Court. Alternatively, the Court finds that even if the privacy issue herein could somehow be deemed substantial, the allegations in the First Cause of Action, fail to state a claim upon which relief can be granted by this Court. *See, J. P. v. DeSanti*, 653 F.2d at 1089–1090 (6th Cir. 1981).

question jurisdiction. In that count, Plaintiff has alleged that the Defendants maliciously caused third persons to terminate their business relationships with him. While these allegations may support a claim under Ohio state law, which permits recovery for contractual interference, or interference with business relationships, *Reichman v. Drake*, 89 Ohio App. 222, 100 N.E.2d 533 (1951), the Second Cause of Action is devoid of a single allegation which could be remotely characterized as claiming a right derived from the Constitution or the laws of the United States. Moreover, Plaintiff has failed to furnish the Court with any authority which would support a constitutional claim based on interference with business relationships. Under these circumstances, the Court must conclude that the Second Cause of Action furnishes no justification for jurisdiction under § 1331. Alternatively, for the reasons stated in footnote 2, *supra*, the Court finds that the Second Cause of Action fails to state a claim upon which relief can be granted under federal law.

■ In the Third Cause of Action, Plaintiff has claimed that he has been injured in, *inter alia*, his reputation, by certain libelous and slanderous utterances of the Defendants. Again, while Ohio state law specifically provides for actions based on libel and slander, *see*, Ohio Rev.Code Ann. § 2739.01 (Page), there is no indication in the Third Cause of Action that Plaintiff is seeking relief directly under the Constitution or laws of the United States. However, Plaintiff has in his memorandum cited the case of *Warren v. National Association of Secondary School Principals*, 375 F.Supp. 1043 (N.D.Tex.1974), in which the district court found, in a § 1983 action, that the dismissal of a high school student from a national honor society constituted a deprivation of liberty under the Fourteenth Amendment, because the student could suffer damage to his reputation. *See, id.* at 1048, citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1974). Therefore, this Court will assume *arguendo* that Plaintiff Wilson, like the Plaintiff in the cited case, has claimed in the Third Cause of Action, a right directly under the Constitution, i.e., a right under the Fourteenth Amendment not to be deprived of a liberty interest in his reputation. Under the standards outlined in footnote 2, *supra*, this claim appears to be wholly insubstantial, in that a prior Supreme Court decision precludes such a claim from being a point of controversy. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court emphatically rejected the concept that an interest in reputation alone constituted either liberty or property guaranteed against state deprivation without due process of law. *See, id.* at 712, 96 S.Ct. at 1165. Like the Plaintiff herein, the respondent in *Paul v. Davis*, alleged that as a result of certain defamatory statements made by State officials, he had been deprived of liberty protected by the Fourteenth Amendment. *See, id.* at 697, 96 S.Ct. at 1158. Even under those circumstances, the Court noted "respondents' complaint would appear to state a classical claim for defamation actionable in the courts of virtually every State." *Id.* The Court went on to state "[c]oncededly if the same allegations had been made about respondent by a private individual, he would have nothing more than a claim for defamation under state law." *Id.* at 698, 96 S.Ct. at 1159. The Court finally concluded:

> [T]he interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions.[3] Kentucky law does not extend to respondent any legal guarantee of present enjoyment of repu-

---

**3.** The decisions referred to by the Supreme Court were *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), wherein the Court found due process rights to be invoked when the State attempted to withdraw previously granted rights to operate vehicles on state highways, and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the Court found certain procedural safeguards to be required before the State could alter the status of a parolee. *See, Paul v. Davis*, 424 U.S. at 711, 96 S.Ct. at 1165.

tation which has been altered as a result of petitioner's actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing the vindication of those interests by means of damages actions. *And any harm or injury to that interest, even where as here inflicted by an officer of the State,* does not result in a deprivation of any "liberty" or "property" recognized by State or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. . . .

. . . .

Respondent in this case cannot assert denial of any rights vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, *petitioner's defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.*

*Id.* at 711–712, 96 S.Ct. at 1165 (emphasis added). Thus, because Plaintiff's defamation claims, at least insofar as they are premised upon a constitutional basis, are foreclosed by the Supreme Court's decision in *Paul v. Davis*, they are wholly insubstantial and do not provide a predicate for federal question jurisdiction under § 1331.

■ Having concluded that none of the claims in the first three causes of action presents a basis for federal jurisdiction under § 1331, or alternatively, that even if they present claims arising under the Constitution, they are wholly insubstantial or fail to state a claim upon which relief can be granted, the Court will next consider whether it is required to assume pendent jurisdiction over the first three causes of action. As was previously noted, Defendants have contended that under *Gibbs, supra,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), this Court should refuse to entertain pendent jurisdiction over the claims in the first three causes of action. Plaintiff has not responded directly to this point, beyond maintaining that because a substantial federal claim exists, i.e., in the Fourth and Fifth Causes of Action,[4] this Court may properly hear and determine the entire case.

In *Gibbs,* the Supreme Court noted that a federal court possessed the *power* to hear pendent state claims which were combined with federal claims, where the entire action comprised "but one constitutional 'case' ", *id.* at 725, 86 S.Ct. at 1138, and the federal issues were substantial. *Id.* Even where these requirements were satisfied, the Court noted that the decision to hear the pendent claims would be discretionary. Specifically, the Court stated:

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by

**4.** In the memorandum submitted by Plaintiff, reference was made, during the discussion of pendent jurisdiction, to the fact that even if § 1331 jurisdiction does not exist, the entire case is properly before this Court "because of the pendent jurisdiction issue and the existence of the independent federal claims growing out of the single cause of action which are [sic] stated in Counts IV and V of the Complaint." In the main text, the Court has assumed, for purposes of discussion, that Plaintiff intended, by the foregoing statement, to refer to the federal claims asserted in Counts VI and VII, i.e., the *Fourth and Fifth Causes of Action,* rather than to Counts IV and V (the Second and Third Causes of Action). Absent this interpretation, Plaintiff's pendent jurisdiction discussion would make no sense, since, through that discussion, Plaintiff appears to be arguing that even if the first three causes of action, e.g., Counts III, IV and V, do not provide an independent basis for federal jurisdiction, then they nonetheless may be retained under the Court's pendent jurisdiction, since they are intertwined with the federal claims in the Complaint. Because Counts VI and VII are the only claims in the Complaint, federal or otherwise, besides the claims contained in the first three causes of action, it is apparent that they are the counts to which Plaintiff intended to refer.

procuring for them a surer-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. at 1139. Significantly, the Court then said "[c]ertainly, *if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.*" *Id.* (emphasis added). Thus, since the only arguable federal claims, i.e., those in the Fourth and Fifth Causes of Action, have been dismissed, the Court must conclude that to retain pendent jurisdiction over the remaining state law claims in the first three causes of action would be an improper exercise of discretion under *Gibbs*.

### V. *Conclusion*

The preceding analysis has indicated that:

1. The Fifth Cause of Action fails to state a claim upon which relief may be granted under 42 U.S.C. § 1985(3), and, accordingly, that Count is dismissed;

2. The Fourth Cause of Action fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983, and, therefore, is conditionally dismissed. Plaintiff will be permitted fourteen days from receipt of this Entry, to file an amended complaint, in compliance with the comments made herein, if Plaintiff should so desire;

3. A ruling on the remaining causes of action, i.e., the first three causes of action, will be held in abeyance pending the filing of the amended complaint. Should an amended complaint not be filed as permitted, then the conclusions reached in Part IV of this Entry, regarding the sufficiency of the first three causes of action under § 1331, and their ability to be retained by virtue of pendant jurisdiction, will take effect. Moreover, even if an amended complaint should be filed, the rulings in Part IV will become operative in the event that this action is disposed of prior to trial.

This Court will delay any action on the outstanding temporary restraining order, pending a determination as to whether this lawsuit shall remain viable.

EXHIBIT "A"

November 4, 1981

PARTIAL TRANSCRIPT OF PROCEEDINGS

IN CHAMBERS:

THE COURT: All right. Mr. Hall, your position?

MR. HALL: Well, let me begin, your Honor, by first saying that even if we assume that Wright State should be joined and the purpose of the joinder is to give the Court jurisdiction to exercise some sort of order, I am not sure that solves the problem for which Defendants are here. I believe this committee, the due process committee, has been constituted for the purpose of hearing the grievances, and operates autonomously from control of the University. And I don't think, even if you enjoin the University, that you have effectively stopped the grievance committee from conducting its business as they have been constituted to do.

I respectfully disagree with Mr. Rupert as to whether you can enjoin the Plaintiff from exercising a right. The document he has given you, the due process mechanism, definitely shows the availability of the right. I am sure that there are situations in which the Court can enjoin a due process committee from hearing a case, but I don't believe there is any authority for enjoining a person from exercising a right.

The question of the joinder comes from conflict between the institutions that are hearing versus the power of the Court to hear the claim that is being presented, not the right of the claimant to have the claim presented.

Now, I think it's important to see the roles of the Plaintiff and the Defendant in order to understand why we feel that the request should not be granted.

Moss and Webb are both employees of the University, as is Dr. Wilson. Webb has no working relationship with Dr. Wilson at the institution. They are separate departments, separate committees, no contact. Moss and Wilson, on the other hand, are in daily contact. Moss is the department

chairman of the department in which Wilson teaches.

The matters that are addressed in the grievance are matters that come from that daily operation, where Moss, as the administrative department chairman, has the right to make decisions to influence how things go to various committees, to conduct the daily operations of the department.

The matters raised in the complaint are addressed to the roles of the individuals in their private lives, lives away from the campus, lives away from the University.

Although we haven't gotten into the evidence of the case, there will be evidence concerning Dr. Wilson's private practice as a psychologist in the community, and Moss and Webb's involvement in that, in efforts to hurt his practice, which is quite distinct from questions we have of interference with Wilson's right to teach a psychology course on campus at the University. His right to relief from someone interfering with his teaching duties are those rights that are on campus and that are exercised through campus grievance procedures.

Now, I think that—and I think I can properly represent that all of the claims raised in the litigation are claims that are related to the parties in their private capacities, not in their capacities as University employees or co-university employees. On the other hand, the grievances are things that are addressed to University relationships.